LYNCH, RESPONDENT, *v.* HERRIG, APPELLANT.

(No. 2,065.)

(Submitted March 17, 1905.  Decided March 31, 1905.)

*Resulting   Trusts—Fraud—Equity   Jurisdiction—Statute— Construction—Appeal—Record—Statement  on  Motion  for New Trial.*

New Trial—Appeal—Statutes.
  1.   An appeal from an order denying a new trial will not be con-
      sidered if not taken within the time allowed by statute.
New Trial—Statement—When Considered on Appeal from Judgment.
  2.   The statement on motion for a new trial, as settled and in the
      record, may be considered, on appeal from the judgment, as to all
      errors of law therein specified, though an appeal from the order deny-
      ing the motion for a new trial was not taken in the time allowed.
Resulting Trusts—Arise by Operation of Law—Not Dependent upon Con-
      tracts.
  3.   The trust presumed to result, under Civil Code, section 1312, in
      favor of the person who pays the consideration for the purchase of
      property, title to which is taken in the name of another, does not
      arise from, or depend upon, a contract or agreement between the
      parties, but is independent thereof and arises by operation of law,
      though such agreements may be considered in establishing the owner-
      ship of the money and how it was invested.
Resulting Trusts—Consideration—When to be Made.
  4.   To raise a resulting trust in favor of one who pays the purchase
      price of property, title to which is taken in the name of another,
      the payment of the consideration must be made at the time when,
      or before, the legal title to the property passes to the party to be
      charged.
Resulting Trusts—What Part of Consideration to be Paid or Tendered.
  5.   To establish a resulting trust, where land sought to be charged
      therewith is purchased under an executory contract, the legal title
      only passing on payment of the price, it is sufficient if an aliquot
      part of the entire price is paid or tendered by the person claiming
      the existence of the trust, at any time before the legal title passes.
Resulting Trusts—Statute of Frauds—Inapplicable.
  6.   The statute of frauds is inapplicable in the case of resulting
      trusts.
Resulting Trusts—In Land—When Declared.
  7.   A resulting trust in land can only be declared when the legal
      title has passed to the party against whom the trust is sought to be
      declared.
Resulting Trusts—Equitable Title—When Property.
  8.   An equitable title to land, which upon payment of a balance due
      on the purchase price will ripen into a legal title, is property, a re-
      sulting trust in which may be declared and enforced by a court of
      equity.
Equity—Jurisdiction—Prevention of Fraud.
  9.   Equity has jurisdiction to prevent the consummation of a fraud.

*Appeal from District Court, Flathead County; D. F. Smith,
Judge.*

SUIT by Charles A. Lynch against Fred Herrig and another.
From a judgment for plaintiff, Herrig appeals.   Affirmed.

*Mr. Sidney M. Logan,* for Appellant.

Before a trust can arise from the circumstance that the pur-
chase price is paid by one person and the title taken in the

name of another, it must be shown that the plaintiff is without legal remedy; that a whole, not a part, of the purchase price was paid by the plaintiff; that such purchase price must be paid by the person claiming the trust at the time of the conveyance, or that the plaintiff assumed an absolute obligation to pay such purchase price. (Tiedeman on Real Property, sec. 500; 2 Pomeroy's Equity Jurisprudence, 1037; 1 Perry on Trusts, 5th ed., secs. 133, 134, 135; *Cases* v. *Cudding,* 38 Cal. 193.) A payment of part of the purchase price will not raise the trust *pro tanto* unless such payment be for a distinct and ascertainable part of the land, and a mere general contribution to the fund will not suffice. (*Guthrie* v. *Tullock,* 5 Wash. 283, 31 Pac. 871; *Barger* v. *Barger,* 30 Or. 268, 47 Pac. 702; 1 Perry on Trusts, 132.) Specific performance would seem to be the most logical remedy in this case, since all the rights claimed by plaintiff seem to be based upon an express agreement, or rather two express agreements, and a trust can never be created by an agreement unless such agreement be in writing. A resulting trust arises purely by operation of law and whenever it is sought to base such a trust on an agreement the rules applicable to express trusts intervene, and unless such agreement be in writing there is no trust.

But the agreements mentioned in the complaint and the testimony of the plaintiff lack all the elements necessary to entitle the respondent to the remedy of specific performance. There is a lack of consideration. (*Bear Track M. Co.* v. *Clark,* 6 Idaho, 196, 54 Pac. 1008.) The contract is uncertain and incomplete. (*Worthington* v. *Worthington,* 32 Neb. 334, 49 N. W. 354; Tiedeman on Real Property, 500; *Mayger* v. *Cruse,* 5 Mont. 485, 6 Pac. 333. See, also, Civil Code, sec. 4416, subd. 6.) It lacks mutuality. (*Ducie* v. *Ford,* 8 Mont. 233, 19 Pac. 414; Pomeroy on Contracts, sec. 163; *Ryan* v. *Dunphy,* 4 Mont. 356; 47 Am. Rep. 355, 5 Pac. 324; *Mayger* v. *Cruse,* 5 Mont. 485, 6 Pac. 333; *Electric L. Co.* v. *Mobile Ry. Co.,* 109 Ala. 190, 55 Am. St. Rep. 928, 19 South. 721.)

*Messrs. Noffsinger & Folsom,* for Respondent.

The facts in this case constitute both a resulting trust and a constructive trust. (As to resulting trusts, see 10 Am. & Eng. Ency. of Law, 1st ed., pp. 5, 8, and cases cited; *Muller v. Buyck,* 12 Mont. 354, 30 Pac. 386; *Walton v. Karnes,* 67 Cal. 255, 7 Pac. 676; *Somers v. Overhulser,* 67 Cal. 237, 7 Pac. 645; *Case v. Codding,* 38 Cal. 193.)

"Constructive trusts are such as are raised by equity in respect to property which has been acquired by fraud or where, though originally acquired without fraud, it is against equity that it should be retained by him who holds the legal title." (Washburn on Real Property, vol. 2, p. 520; *Lewis v. Lindley,* 19 Mont. 422, 48 Pac. 765.) Owning an interest in the contract, plaintiff is entitled to all its benefits. (*Anthe v. Heide,* 85 Ala. 236, 4 South. 380; *Hidden v. Jordan,* 21 Cal. 94; *Moore v. Moore,* 74 Miss, 59, 19 South. 953; *Thomas v. Jameson,* 77 Cal. 91, 19 Pac. 177; *Hellman v. Messmer,* 75 Cal. 166, 16 Pac. 766; 10 Am. & Eng. Ency. of Law, 1st ed., 14, 15.)

A trust relation applies equally to real and personal property. (10 Am. & Eng. Ency. of Law, 1st ed., p. 14, sec. 6.) Bispham in his Principles of Equity, says: "It applies to both realty and personalty, and trusts of this nature are expressly excepted out of the statute of frauds." (*Grant v. Heverin,* 77 Cal. 263, 19 Pac. 493; *Ellsworth v. Ames Co.,* 125 Ill. 223, 17 N. E. 467; *Union Bank v. Barker,* 8 Humph. (Tenn.) 447; *Creed v. Lancaster Bank,* 1 Ohio St. 1.) The following cases are upon contracts relating to land or contracts for acquiring title thereto: *Reynolds v. Sumner,* 126 Ill. 58, 9 Am. St. Rep. 523, and note, 18 N. E. 334; *Bear v. Koinigstein,* 16 Neb. 65, 20 N. W. 104; *Lambert v. Stees,* 47 Minn. 141, 49 N. W. 662; *Brotherton v. Weaterby,* 73 Tex. 471, 11 S. W. 505; *Bell v. Warden,* 39 Tex. 108; *Doss v. Slaughter,* 53 Tex. 237; *Rose v. Treadway,* 4 Nev. 455, 97 Am. Dec. 546; *Treadway v. Wilder,* 8 Nev. 91.

MR. COMMISSIONER CLAYBERG prepared the opinion for the court.

Appeal by defendant from a final judgment, and from an order overruling a motion for a new trial.

The material allegations of the complaint are as follows: That on or about the 29th day of December, 1899, the defendant, for and in behalf of himself and plaintiff, entered into a contract with the Northern Pacific Railway Company for the purchase of the south half of section 19, township 28 north, of range 25 west, for the sum of $640, payable in annual installments of $106.60; that the first payment was made on or about the 29th day of December, 1899, one being due on the 29th day of December of each year thereafter until the full amount, together with interest, had been fully paid; that the railway company at the time the contract was entered into was, and ever since has been, except as herein stated, the owner of said land; that the said purchase by defendant was made and entered into in his own name, but in trust and on behalf of plaintiff for one-half of said land, to wit, the southeast quarter of said section; that, in consideration of said contract, but prior to entering into the same, the plaintiff paid and gave to defendant his one-half of the amount necessary to make the first payment thereon, which the said defendant paid over to the railway company, and the contract of purchase was forwarded to defendant, and that upon receipt of the same he was to transfer the interest of plaintiff therein to him, but that upon an examination of the provisions of said contract it was found that it contained a provision preventing any assignment or transfer of a portion of said tract of land therein mentioned, less than the whole thereof, and that said defendant thereupon agreed that, at the time he and the plaintiff were at some place where the agreement could be drawn, he would give plaintiff a written agreement showing his interest in said contract and said lands, and that when the contract was fully paid, and title obtained thereto from the railway company, he would at once convey to plaintiff the portion of said lands purchased for him as aforesaid; that thereafter plaintiff paid to defendant his one-half of the payment due on December 29, 1900, with

interest thereon, and also one-half of all taxes upon the entire land for the year 1900, which was accepted by said defendant in full payment thereof, and was duly paid to the railway company; that, prior to the time the payment for the year 1901 was due, plaintiff offered to pay defendant his share of said payment and interest, then or at any time the said defendant wanted it; that said defendant told him that he would call upon him for the money when he was ready to remit to the railway company, but that he has failed and neglected to call for it, and that the plaintiff has at all times been, and is now, ready to pay the same, and tenders into court for him the sum of $75, which is in excess of said annual payment and taxes for the year 1901; that since the time of said annual payment has passed the said defendant has refused to accept the money or any money from plaintiff in payment thereof, and that said plaintiff offered to pay him any sum that was due under said contract of purchase and the agreement with plaintiff, and also for all taxes and charges thereon, but the said defendant has refused to accept the same or any portion thereof, and has said that all of the land embraced in the contract is his, and that he did not propose to accept any money from plaintiff, or allow him to have anything to do with said land, and that he would sell or dispose of the same as his own in every way, and that plaintiff had no interest therein. Then follow allegations that defendant is about to sell or dispose of the contract, where the land is situated, the occupation of defendant, and want of ability to see him, etc., and allegations of the insolvency of the defendant. The complaint further alleges "that the plaintiff has complied with all the conditions on his part to be performed as far as possible, and is ready to comply with all the conditions thereof." To this complaint a demurrer was interposed, which was overruled, and defendant answered, denying "each and every allegation of said complaint."

The Northern Pacific Railway Company also filed an answer, which is immaterial for consideration upon this appeal, to which plaintiff replied. The case went to trial before a

jury;. which rendered special findings in plaintiff's favor, whereupon a final decree was entered declaring that the plaintiff "is the owner of the southeast quarter of section 19, township 28 north, of range 25 west, subject to the interest of the defendant the Northern Pacific Railway therein, and is entitled to the possession thereof." This decree is based upon the conclusion of the court that the defendant holds the interest he now has in said quarter section of land in trust for the plaintiff. The decree then enjoins the defendant from "in any manner interfering with or molesting the plaintiff in the possession of said lands or any portion thereof," and "from in any manner transferring, assigning, or conveying said lands, or a portion thereof, or the said contract with the Northern Pacific Railway Company." The decree further provides that, "if he shall acquire title to said lands under said contract, to convey the southeast quarter of said section 19 to the plaintiff, Charles A. Lynch, provided that said plaintiff shall have paid into court, or tendered or paid to the defendant, the sums required to be paid under said contract in the manner provided therein." The decree then enjoins the railway company from conveying the lands to anybody except the defendant or plaintiff, provided "that said parties shall have complied with said contract hereinbefore referred to, with the said Northern Pacific Railway Company." The decree further provides that it does not intend to in any way interfere with the rights of the railway company under said contract, but only to adjudicate the interests between plaintiff and defendant thereunder. The defendant railway company seems to have been satisfied with the decree entered, not having appealed therefrom.

It may be somewhat difficult to conclude from the complaint alone what particular theory of recovery plaintiff's attorney had in mind, but, after a consideration of the complaint and the testimony given at the trial, all of which is contained in the transcript on appeal, we have concluded that the purpose of the suit is to have a resulting trust declared in favor of plaintiff to an

interest in the contract entered into between defendant and the railway company. We shall consider the appeal upon this theory.

An examination of the record discloses that the appeal by defendant from the order denying his motion for a new trial was not taken within the time allowed by the statutes. Therefore such appeal will not be considered by this court. However, the statement on motion for a new trial, as settled and in the record, may be considered, on the appeal from the judgment as to all errors of law therein specified. (*Whalen* v. *Harrison,* 26 Mont. 316, 67 Pac. 934; *Mahoney* v. *Dixon,* 31 Mont. 107, 77 Pac. 521.)

1. As to the jurisdiction of a court of equity in reference to resulting trusts in land generally: The Civil Code of Montana provides that "when a transfer of real property is made to one person, and the consideration thereof is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." (Civil Code, sec. 1312.) This statute is but declaratory of the common law, and it has been held by courts of equity, since the earliest days, that if one person pays the consideration for the purchase of property, and the title is taken in the name of another, such other holds the property in trust for the person who pays the consideration. This resulting trust does not arise from, or depend on, a contract or agreement between the parties. It is independent of any contract, and arises by operation of law from the fact that the consideration for the purchase of the property was paid by one person, and the title to the property purchased taken in the name of another. While the agreements or contracts between parties do not of themselves form the basis of any relief as to the trust, they may be important for consideration in assisting to establish the fact of the ownership of the money, and how it was invested. (*Bruce* v. *Roney,* 18 Ill. 67; *Van Buskirk* v. *Van Buskirk,* 148 Ill. 9, 35 N. E. 383.)

It is well established that, in order to raise a resulting trust, the payment of the money as the consideration for the purchase of the property must be made at the time or before the legal title to the property passes to the party to be charged in the trust capacity, and that any moneys paid or contracts or agreements made thereafter are not sufficient to raise a resulting trust. Here the legal title to the land still rests in the vendor; the railway company only having given an executory contract of purchase and sale to the defendant herein, which provides that the conveyance of the property shall only be made after full payment of the purchase price. The first payment by respondent was made prior to the making of this executory contract with the railway company, the second payment was made at the time specified in such contract, and the third payment was tendered in time to meet the third payment under said executory contract. The subsequent payments are not yet due. The plaintiff offers in his complaint to comply with the conditions of the contract.

To establish the existence of a resulting trust, where the land sought to be charged therewith is purchased under an executory contract, the legal title only passing upon full payment of the purchase price, it is sufficient if the money is paid by the person claiming the existence of the trust at any time before such legal title passes. (*Gilchrist* v. *Brown,* 165 Pa. St. 275, 30 Atl. 839; *Moore* v. *Moore,* 74 Miss. 59, 19 South. 953; *Murry* v. *Sell,* 23 W. Va. 475; *Milner* v. *Freeman,* 40 Ark. 62.) It is another well-recognized principle that the money paid must be an aliquot part of the entire purchase price. Therefore, unless plaintiff pays or tenders such aliquot part no trust will arise because of indefiniteness.

The statute of frauds has nothing to do with the case, because specific performance of the contract or agreement between the parties is not necessary or sought, and the trust does not arise upon the contract, but upon the payment of the purchase money. (*Bates* v. *Kelly,* 80 Ala. 142; *Millard* v. *Hath-*

*away*, 27 Cal. 119; *Walton* v. *Karnes*, 67 Cal. 255, 7 Pac. 676.)

It seems clear, therefore, that this action could not be maintained at the time of the commencement of the suit for the purpose of establishing a resulting trust in the land, because the legal title thereto did not rest in the party sought to be charged therewith. A resulting trust in land can only be declared when the legal title has passed to the party against whom the trust is sought to be declared. Here only a contract has been entered into for the purchase of land between the defendant and the Northern Pacific Railway Company. Respondent paid his half of the money necessary to procure the contract, and this payment was made prior to its procurement. This gave plaintiff an equitable interest in the contract. In other words, the appellant held the legal title to the contract in his own right, and in trust for respondent. The land is only affected incidentally, as the trust cannot attach to it until the contract has been performed, and the title passed from the railroad company to appellant.

2. As to the jurisdiction of a court of equity in reference to declaring a resulting trust in an executory contract of purchase: Can a resulting trust be established in Lynch's favor, as against Herrig, under the circumstances disclosed by the record?

As before stated, Herrig holds a contract for the purchase of certain lands from a railroad company, upon which a portion of the payments were not due at the time of the institution of this suit. Under this contract, Herrig does not become entitled to a conveyance of the legal title until the full purchase price is paid. No resulting trust can, therefore, be declared in the land, because Herrig does not hold the legal title thereof. He, however, has an equitable title to the lands, and a contract which will ripen into a right to demand the legal title upon the payment of the balance of the purchase price. This right is property, and is recognized as such by all the authorities. He may sell and dispose of it, and a conveyance of

the land by him would transfer this right under the contract to the grantee. Upon his death it would descend to his heirs. Being property of this character, recognized in both law and equity, a resulting trust in such property may be declared and enforced against defendant.

As well said by the supreme court of West Virginia in the case of *Currence* v. *Ward,* 43 W. Va. 367, 27 S. E. 329: "That equitable title is a sufficient title, in the eyes of a court of equity, to be the subject of a trust, sufficient to enable a court of equity to declare the right as to it, for there can be a trust under a legal or an equitable estate in anything which a court of equity recognizes as a subject of property. (27 Am. & Eng. Ency. of Law, 24; Underhill on Trustees, 9, note; 1 Perry on Trusts, secs. 67, 96.) If A buy an executory title with B's money, cannot B sue A and the vendor, before deed made, to declare the trust, and have the title made to him?" In that case A's land was sold under an order of court. B became the purchaser at the sale, and subsequently orally agreed with A that, upon payment of the amount of his bid to him, he would convey the land to A. The bid not having been paid, the property was resold, and B again became the purchaser. Afterward, and before B procured the deed upon the sale, he sold the land to C. A in the meantime had paid B certain sums on the agreement, and brought suit against B and C, asking that a trust against B be declared, and that C's purchase be canceled. In the opinion of Judge Brannon, he first bases the relief granted on the existence of an express trust, holding that the parol agreement between A and B was sufficient for that purpose (the statute of frauds of that state not prohibiting), and then states that, even if there was no express trust, a resulting one arose. Judge Dent, concurring specially, bases the relief on the ground that equity has jurisdiction to prevent the consummation of a fraud, and seems inclined to hold that a constructive trust arose.

Of course, in this state, no express trust can be based upon the oral agreement between plaintiff and defendant. (Civil

Code, sec. 1311.)   But the agreement alleged and the facts found are sufficient to raise a resulting trust in the contract in plaintiff's favor.   If plaintiff pays his share of the purchase money, as specified in the contract, a trust will result to him in the southeast quarter of said section.

3. As to the jurisdiction of a court of equity in reference to preventing the consummation of a fraud: But again, it is well established that equity will always interpose its jurisdiction to prevent the consummation of a fraud, and this jurisdiction can be called on at any time to make it effective.   Defendant Herrig agreed with plaintiff, Lynch, that he would make a contract with the Northern Pacific Railway Company for the south half of section 19, and that, if Lynch should pay one-half the purchase price thereof, he would see that there should be conveyed to him the southeast quarter of the section. There was no writing between the parties.   Lynch, relying upon this agreement, made two payments on the contract, and tendered a third, and also paid one-half of all the taxes on the land for the two years.   If Herrig should be allowed to obtain a deed from the Northern Pacific Railway Company for the entire south half of the section, and he should then sell the land to an innocent purchaser without recognizing Lynch's right, or if he should sell or assign the contract of purchase to a third person, a *bona fide* holder, without recognition of such rights, Lynch would be defrauded.   A court of equity has ample jurisdiction to interfere and prevent the consummation of such a fraud.   So that, whether a trust arises from the dealings and transactions of the parties, or whether it is the purpose to prevent the consummation of fraud, equity has full and complete jurisdiction, and will grant the relief asked.

The decree appealed from may be a little too broad in some of its terms, but can work no injury to any of appellant's rights, and clearly does equity between the parties.   We therefore advise that it be affirmed.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment is affirmed.

*Affirmed.*

Rehearing denied, June 3, 1905.