McQUAY, Respondent, *v.* McQUAY, Appellant.

(No. 6,212.)

(Submitted January 6, 1928. Decided January 18, 1928.)

[263 Pac. 683.]

*Real Property—Conveyance—Resulting Trust—When Convey-*
*ance Presumed Gift — Evidence — Attorney and Client —*
*Privileged Communications—Findings—When Controlling on*
*Appeal — Pleading and Practice — Complaint — Demurrer—*
*Waiver.*

Pleading and Practice—Complaint—Ambiguity and Uncertainty—An-
swering Over After Demurrer Overruled Waives Defect.
1. Where defendant answers over after his demurrer to the com-
plaint on the ground of uncertainty or ambiguity was overruled,
he will be held to have waived his objection.

Real Property—Conveyance—Resulting Trust—When Created.
2. When a transfer of real property is made to one person and
the consideration therefor is paid by or for another, a trust is
presumed to result in favor of him by or for whom such payment
is made; such resulting trust is created by operation of law, and
not by contract, and may be proved by parol evidence.

Same—Conveyance to Relative—When Presumed Gift.
3. Where property is purchased by one with his own money and
the title is placed by him in another with whom he stands in
confidential relation, such as husband, wife, parent, child or such
other relation that the grantee may naturally have a claim upon
the bounty of the grantor, the presumption, rebuttable in char-
acter, is that the conveyance is made as a gift.

Same—Resulting Trust—When Evidence to Establish Deemed Satis-
factory—Findings—When Controlling.
4. In an action to establish a trust the evidence must be clear,
convincing, satisfactory and practically free from doubt to warrant
a finding in favor of plaintiff, and the evidence is of such char-
acter if it satisfies the conscience of the chancellor who tries the
cause and the supreme court on appeal cannot say that it clearly
preponderates against his findings.

---

1. Other pleading as waiver of objections to overruling of demurrer,
see note in **Ann. Cas.** 1913B, 388. See, also, 21 Cal. Jur. 129.
2. Definition of resulting trust and when created, see note in 51
**Am. Dec.** 751. See, also, 25 **Cal. Jur.** 178 et seq., 191; 26 **R. C. L.**
1219, 1230.
3. Gratuitous conveyance as raising resulting trust in favor of
natural objects of the bounty of the grantor or donor, see note in
**L. R. A.** 1915E, 648. See, also, 25 **Cal. Jur.** 193.
4. Sufficiency of evidence to establish resulting trust, see note in
**Ann. Cas.** 1916D, 1194. See, also, 26 **R. C. L.** 1231.

Evidence—Preponderance may be Established by Single Witness.

    5. A preponderance of the evidence may be established by the testimony of a single witness against a greater number of witnesses who testify to the contrary.

Real Property—Conveyance by Father to Son—Resulting Trust—Evidence—Sufficiency.

    6. In an action by a father against his son to establish a resulting trust in real property purchased by the former but title to which was placed in the son at a time when the latter was attending school, evidence showing that the grantor paid the entire consideration for the property, and thereafter paid the taxes and expenses incident to repairs, etc., *held* sufficient to warrant judgment for plaintiff.

Same — Evidence — Attorney and Client — Privileged Communications— When Rule Inapplicable.

    7. Where in an action by father against son to establish a resulting trust in real property, the parties after transfer of the property by the former to the latter, had occasion to consult an attorney whose services were paid for by plaintiff, relative to securing payment of rentals from the tenant, admission of testimony by the attorney that the trend of the conversation in his office was that the father was the owner and the son his agent, was not error as violative of the provisions of the statute relative to privileged communications.

Same—Evidence—Attorney and Client—Privileged Communications— Inapplicability of Rule.

    8. Upon the assumption that the attorney, referred to in the foregoing paragraph, was the attorney for both parties, communications made to him while acting as such do not come within the prohibition of the statute when a controversy arises as to a matter about which he was the common adviser.

---

    [1]    Pleading, 31 Cyc., p. 747, n. 32.  Trusts, 39 Cyc., p. 618, n. 38.
    [2]    Trusts, 39 Cyc., p. 118, n. 5, p. 155, n. 32.
    [3]    Gifts, 28 C. J., sec. 74, p. 672, n. 64.  Trusts, 39 Cyc., p. 136, n. 17, p. 160, n. 56.
    [4]    Appeal and Error, 4 C. J., sec. 2869, p. 900, n. 96.  Trusts, 39 Cyc., p. 166, n. 89, p. 633, n. 22.
    [5]    Evidence, 23 C. J., sec. 1756, p. 23, n. 54.
    [6]    Trusts, 39 Cyc., p. 160, n. 62.
    [7]    Witnesses, 40 Cyc., p. 2368, n. 25.
    [8]    Witnesses, 40 Cyc., p. 2368, n. 25.

*Appeal from District Court, Silver Bow County; George Bourquin, Judge.*

---

    5. Preponderance of evidence as determined by mere number of witnesses, see note in Ann. Cas. 1913D, 676. See, also, 10 Cal. Jur. 1141; 10 R. C. L. 1005.

    7. Privileged communications between attorney and client, see notes in 36 Am. Rep. 631; 66 Am. St. Rep. 220; Ann. Cas. 1913A, 3; Ann. Cas. 1916E, 335; 67 L. R. A. 923. See, also, 27 Cal. Jur. 50; 28 R. C. L. 548 et seq.

    8. Privileged character of communications where attorney acting for several clients jointly, see note in 11 Ann. Cas. 877. See, also, 27 Cal. Jur. 52; 28 R. C. L. 565.

Action by James McQuay against Ray McQuay. Judgment for plaintiff and defendant appeals. Affirmed.

*Mr. John K. Claxton* and *Mr. Philip O'Donnell*, for Appellant, submitted a brief; *Mr. Claxton* argued the cause orally.

Evidence to establish a trust must be clear, convincing, satisfactory and practically free from doubt. (*Eisenberg* v. *Goldsmith*, 42 Mont. 563, 113 Pac. 1127; *Clary* v. *Fleming*, 60 Mont. 246, 198 Pac. 546; *Woodside* v. *Hewell*, 109 Cal. 481, 42 Pac. 152; *Plass* v. *Plass*, 122 Cal. 3, 54 Pac. 372; *Brazil* v. *Silva*, 181 Cal. 490, 185 Pac. 174; *First Nat. Bank* v. *Campbell*, 2 Colo. App. 271, 30 Pac. 357; *Doll* v. *Gifford*, 13 Colo. App. 67, 56 Pac. 676; *Warren* v. *Adams*, 19 Colo. 515, 36 Pac. 604; *Cecil* v. *Beaver*, 28 Iowa, 241, 4 Am. Rep. 174; *Meagher* v. *Harrington*, 78 Mont. 457, 254 Pac. 432.) It will be clear from the above cases that, when a deed conveying real property is given by a father to a son, a presumption arises that a gift was intended. And this presumption can only be overcome by clear, convincing and satisfactory evidence, practically beyond a reasonable doubt, that a gift was not intended. This presumption is one that has become deeply rooted in our law and cannot be overcome by the uncorroborated testimony of the grantor. In the controlling Iowa case of *Cecil* v. *Beaver*, above, we find the rule well stated by Judge Dillon.

*Clary* v. *Fleming*, supra, clearly and without conjecture sets forth the rule that the statutory law, to-wit, the creation of a trust by operation of law, applies only when the transaction is between strangers, and where there is no natural or legal obligation resting on the purchaser to pay the consideration for another.

Great stress is laid by the plaintiff upon the fact that the rents from the property were collected by Ray McQuay and in turn were given to the father. It is well settled that such an incident does not rebut the presumption of a gift and the rule is well stated in Perry on Trusts in paragraphs 145 and 146 at pages 195 to 198.

In the case of *Chambers* v. *Emery*, 13 Utah, 374, 45 Pac. 192, the court said: "If it were once established that the effect of the terms of a written instrument could be voided by a bare preponderance of parol evidence, the gates to perjury would soon be wide open, and no person could longer rest in the security of his title to property, however solemn might be the instrument on which it was founded." To the same effect are the cases of *Sheehan* v. *Sullivan*, 126 Cal. 189, 58 Pac. 543; *Rice* v. *Rigley*, 7 Idaho, 115, 61 Pac. 290; *Voorhies* v. *Hennessy*, 7 Wash. 243, 34 Pac. 931; *Cushing* v. *Heuston*, 53 Wash. 379, 102 Pac. 29.

The New York case of *Sheldon* v. *Chemung Canal Bank*, 67 Misc. Rep. 631, 122 N. Y. Supp. 1057, affirmed in 140 App. Div. 938, 125 N. Y. Supp. 1144, is to the effect that where a husband made a valid gift of a life insurance policy to his wife, the fact that he subsequently executed a formal assignment to her and she in presenting her claim to the insurer referred to the assignment as her title does not impeach her title under the gift. This law also applies to the statements made by the plaintiff after the execution of the deed by inserting the name of the defendant therein as grantee and the recording thereof by the plaintiff, as to the effect that the defendant could keep and retain the property as his own. Such statements are merely reaffirmations and assurances that he would not attack the title in the defendant as it then stood but that the property could remain free from claim by him as the property of the defendant, and was, indeed, further assurance that the gift of the property was absolute and complete.

*Mr. A. G. Shone* and *Mr. R. F. Gaines*, for Respondent, submitted a brief; *Mr. Gaines* argued the cause orally.

Section 6785, Revised Codes 1921, provides that when a transfer of real property is made to one person and the consideration thereof is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made. This is but one of the species of circum-

stances out of which the law operates to create a trust.   And
while in *Clary* v. *Fleming,* 60 Mont. 246, 198 Pac. 546, this
court has recognized exceptions to this rule which may exist
where the dealings are between husband and wife or parent
and child, ''where one may naturally have a claim upon the
bounty of the other,'' that relationship only creates a rebuttable
presumption, which cannot enable appellant to prevail in the
instant case.

Explicitly illustrative of transactions out of which law or
equity creates trusts is the language used by this court in
the case of *Mather* v. *Musselman,* 79 Mont. 566, 257 Pac.
427.   As further indicated in that decision the trusts vari-
ously denominated ''constructive'' and ''resulting'' may fre-
quently comprise elements of both or even be interchangeably
spoken of.   Squarely to the proposition that such trusts may
be established by parol are the following: *Wilson* v. *Wilson,* 64
Mont. 533, 210 Pac. 896; Jones on Evidence, 2d ed., sec. 425;
*Crabtree* v. *Potter,* 150 Cal. 710, 89 Pac. 971.

In each of the following cases constructive or resulting
trusts—trusts created by operation of law—were involved, and
in all of them, the right to the use of parol evidence was recog-
nized: *Lynch* v. *Herrig,* 32 Mont. 267, 80 Pac. 240; *Eisenberg*
v. *Goldsmith,* 42 Mont. 573, 113 Pac. 1127; *Marcellus* v. *Wright,*
51 Mont. 559, 154 Pac. 714; *Feeley* v. *Feeley,* 72 Mont. 84, 231
Pac. 908.

The courts generally recognize the right, as between the par-
ties, to show by parol evidence the true state of facts with
reference to conveyances of real property in instances where
it would be inequitable to permit the record title holder to
retain the property.   A few of the many cases dealing with
parent and child transactions are cited: *Crabtree* v. *Potter,*
supra; *Parks* v. *Parks,* 179 Cal. 472, 177 Pac. 455; *White* v.
*Ross,* 160 Ill. 56, 43 N. E. 336; *Cardiff* v. *Marquis,* 17 N. D.
110, 114 N. W. 1088; *Jerome* v. *Bohm,* 21 Colo. 322, 40 Pac.
570; *Giffen* v. *Taylor,* 139 Ind. 573, 37 N. E. 392; *Goldsmith*
v. *Goldsmith,* 145 N. Y. 313, 39 N. E. 1067; *Hanson* v. *Svar-
verud,* 18 N. D. 550, 120 N. W. 550; *Landrum* v. *Landrum*

(Tex. Civ. App.), 130 S. W. 907; *Robinson* v. *Strauther,* 106 Miss. 754, 64 South. 724; *Stevens* v. *Fitzpatrick,* 218 Mo. 708, 118 S. W. 51; *O'Neill* v. *O'Neill,* 227 Pa. 334, 76 Atl. 26; *Vanderpool* v. *Vanderpool,* 163 Ky. 742, 174 S. W. 727. Such being the law—that the lack of a writing does not defeat respondent—the burden is upon appellant to disclose that the evidence here preponderates decidedly against the findings of the court. (*Missoula Public Service Co.* v. *Bitter Root Irr. Dist.,* 80 Mont. 64, 257 Pac. 1038; *Gravelin* v. *Porier,* 77 Mont. 260, 250 Pac. 823.)

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

By this action the plaintiff James McQuay sought to have his son, defendant Ray McQuay, declared a trustee of property of which plaintiff claimed to be the rightful owner.

The record discloses that in 1915 Kate Fogarty executed and delivered to plaintiff a grant deed conveying residence property in Butte for the sum of $950, paid by plaintiff. By express direction of plaintiff the name of the grantee was omitted from the deed, the plaintiff reserving the right to insert the name of a grantee therein when he should choose to do so. The reason for this was that plaintiff did not carry property in his own name. Years before, he had trouble with his wife over the matter of her joining with him in the execution of a deed designed to reconvey to a borrower property, which the borrower had conveyed to plaintiff as security for a loan. Plaintiff determined that his wife should not have the chance to embarrass him in that way again.

After purchasing the property from Fogarty, plaintiff made extensive repairs and additions upon it at a cost of $2,400. Plaintiff himself worked upon the house and his son assisted when he was not in school. The son was seventeen years old when the property was purchased. After the house was made habitable, the plaintiff leased it to tenants, among others to one McKenzie, who failed to pay the rent. In September, 1923, McKenzie was far in arrears. The plaintiff, having been

obliged to move some miles away from the property in order to carry on his work as a mine foreman, and as his son was attending school and had the time to give to the collection of the rents, inserted his son's name in the deed, recorded it, and after its return to him, delivered it to his son, the defendant. The plaintiff testified that he talked over the rental situation with the defendant and suggested the insertion of the defendant's name in the deed so that the defendant could act as his agent, contemplating that if McKenzie did not pay the defendant could take proceedings against him, and that the defendant had agreed to that course. Some time after the delivery of the deed, defendant having failed to collect the rent from McKenzie, the parties, father and son, called upon Mr. Shone, an attorney at law, at the suggestion of the plaintiff, and talked over the situation with him. The plaintiff told Shone he wanted McKenzie out of the house because he was not receiving any rents and said that defendant was his agent. This testimony was corroborated by Shone but denied by the defendant. The plaintiff testified that from 1923 forward to 1926, as well as from 1915 to 1923, he paid the taxes upon the property with his own money. He also paid the water rent for the house at all times. He made repairs upon the house himself; he paid for repairs made by others. The plaintiff collected the rentals upon the house at all times until about July, 1925, after which the defendant collected them and turned them over to plaintiff.

In 1926 there was a family quarrel. As a result of this the plaintiff demanded of the defendant that he convey the property to him, which the defendant refused to do. This suit followed.

Plaintiff alleged his ownership of the real property in controversy and his right to the possession thereof, the acquisition of the property by him from Fogarty in 1915, and the delivery to him of a deed in which no one was named as grantee, but with a right reserved in him to insert the name of a grantee; that after the receipt of the deed, but before recording it, he named as grantee therein Ray McQuay, the defendant, plain-

tiff's son, in whom as such, plaintiff, when naming him as grantee, reposed a special trust and confidence; that defendant has never paid any consideration for the property, either to the grantor Fogarty or to the plaintiff, but by agreement with plaintiff defendant consented that his name should be used as grantee to hold the legal title to the property in trust for the plaintiff until such time as the plaintiff should request its reconveyance to him, "and upon the express promise that he would convey said property to plaintiff or his nominee"; that about August 1, 1926, plaintiff demanded of defendant that he execute and deliver to him a good and sufficient instrument conveying the property, but defendant refused to execute the same and continued so to refuse; that defendant has not paid out or expended any sum of money or rendered any service of any kind for the benefit of or on account of the property, nor has defendant any claim in equity to or against the property; but if defendant has paid out or expended any sum of money for or on account of the property or if he has rendered any services for the benefit of the property plaintiff is ready, able and willing and offers either to repay the advances which may have been made, or the reasonable value of any services, as the court shall decree to be just and equitable. Plaintiff prayed that the court decree that defendant holds the legal title to the property in trust for the plaintiff, and that defendant be required to execute and deliver to plaintiff a good and sufficient conveyance therefor.

The defendant demurred to the complaint, alleging that it does not state facts sufficient to constitute a cause of action, and that it is uncertain, likewise ambiguous, in that it cannot be ascertained therefrom when the plaintiff named the defendant as grantee in the deed nor whether the agreement between plaintiff and defendant was oral or in writing, nor when the plaintiff requested a reconveyance of the property. The court overruled the demurrer and the defendant answered. In addition to the general denials, the defendant alleged in effect that there was not any memorandum in writing, or written instrument of any description, subscribed by the defendant respecting

the property; and that defendant, on September 29, 1923 (the date of the deed), acquired the property by gift from the plaintiff, in consideration of the natural love and affection then existing between the plaintiff and defendant. Other allegations of the answer need not be stated.

The affirmative allegations of the answer were traversed by reply.

The court found that all the allegations of plaintiff's complaint were true and that those contained in defendant's answer were not true, except as to the possession of the property by the defendant, and that there was no written agreement between plaintiff and defendant showing the existence of any trust relationship. The court found that according to all of the testimony, including that of defendant and his witnesses, plaintiff and not defendant at all times subsequent to the recording of the deed, exercised such control and supervision over the property as would be natural with the owner of any property, and that the plaintiff's testimony respecting the nature and purpose of the transfer to the defendant was corroborated by other testimony. Upon its findings the court· entered a decree awarding plaintiff the relief asked for in his complaint. The defendant's motion for a new trial having been overruled he appealed from the judgment.

1. As the defendant answered over upon the overruling of [1] his demurrer, he cannot now urge his point that the complaint is uncertain or ambiguous. (*Robinson* v. *Woolworth Co.*, 80 Mont. 431, 261 Pac. 253; *Pue* v. *Wheeler*, 78 Mont. 516, 255 Pac. 1043.)

2. The complaint states a cause of action against the defendant.

Section 6785, Revised Codes 1921, provides that when a [2] transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made. (*Lynch* v. *Herrig*, 32 Mont. 267, 80 Pac. 240; *Feeley* v. *Feeley*, 72 Mont. 84, 231 Pac. 908.) The trust presumed under these circumstances is a resulting trust

(*Meagher* v. *Harrington,* 78 Mont. 457, 254 Pac. 432), is created by operation of law, not by contract, and may be proved by parol evidence. (*Wilson* v. *Wilson,* 64 Mont. 533, 210 Pac. 896; *Feeley* v. *Feeley,* supra.)

It is true that if property is purchased by one with his [3] own money and the title is placed by him in another with whom he stands in a confidential relation, such as husband, wife, parent, child or such other relation that one may naturally have a claim upon the bounty of the other, the presumption is that the conveyance is made as a gift. (*Clary* v. *Fleming,* 60 Mont. 246, 198 Pac. 546.) We have here two rebuttable presumptions either of which may be overcome by testimony which satisfies the trier of the facts.

It is also true that evidence to establish a trust must be [4] clear, convincing and satisfactory and practically free from doubt. When is the evidence of that character? The answer must be that if it has satisfied the conscience of the chancellor before whom the trial was had, and this court cannot say that the evidence clearly preponderates against the finding the requirement must be held to be satisfied. We must follow the oft-repeated rule that this court will not overturn the findings of the trial court unless there is a decided preponderance of the evidence against them; and, when the evidence, fully considered, furnishes reasonable grounds for different conclusions the findings will not be disturbed. (*Allen* v. *Petrick,* 69 Mont. 373, 222 Pac. 451; *Gravelin* v. *Porier,* 77 Mont. 260, 250 Pac. 823.) It must be remembered that a preponderance [5] of the evidence may be established by the testimony of a single witness against a greater number of witnesses who testify to the contrary. (*Doane* v. *Marquisee,* 63 Mont. 166, 206 Pac. 426; *State ex rel. Bourquin* v. *Morris,* 67 Mont. 40, 214 Pac. 332; *Robinson* v. *Woolworth Co.,* supra.)

It would be useless to enter into a discussion of the testimony. In places it is in sharp conflict. We have examined [6] the record thoroughly, and cannot say that the evidence preponderates against the trial court's findings. Indeed, it appears to us that the judge of the trial court who had the

[81 Mont. 311.]

witnesses before him and who had the decided advantage of hearing their testimony, observing their conduct and demeanor upon the stand, may well have concluded that the evidence clearly and satisfactorily preponderates in favor of the plaintiff. He heard what the witnesses said "and saw how or the manner in which they said it." (*Sanger* v. *Huguenel,* 65 Mont. 236, 211 Pac. 349.)

3. It is argued that the court erred in receiving the testimony of Mr. Shone as to what was said by plaintiff and defendant in Shone's office respecting the relations of the parties concerning the property. Shone was employed to collect the rents from McKenzie, or, failing in that, to bring proceedings to oust him from the premises. Shone testified that he was employed by and paid by plaintiff. He said: "The general conversation all through in my office was that Jim McQuay was the owner of the property and that Ray was just handling the transaction for him." We think the testimony does not come within the inhibition of section 10536, Revised Codes 1921, as amended (Sess. Laws 1925, p. 109). In other words, we do not think it was a privileged communication within the purview of that section. If it be assumed that Shone acted as attorney for both the parties, and that is the most favorable assumption that can be made for defendant, the evidence was properly admitted. "The witness was asked only to relate what took place at that time between the plaintiff and defendant while he was acting for both. Communications made to an attorney while acting for both parties do not come within the prohibition of the statute when a controversy arises as to the matter about which he has thus been the common adviser." (*Lenahan* v. *Casey,* 46 Mont. 367, 128 Pac. 601; 5 Jones on Evidence, 2d ed., p. 4143.

The judgment is affirmed.

*Affirmed.*

Associate Justices Myers, Stark, Matthews and Galen concur.

Rehearing denied February 10, 1928.