L. W. Levy & Company et al. v. Ellen Mitchell et al.

Decided November 1, 1908.

#### 1.—Wife's Separate Property—Express Trust.

A wife entrusted to her husband money which was of her separate estate to buy certain lots; he, without her knowledge, took deed in his own name, giving his note for the purchase money; afterwards, on her learning the facts, he paid for the property with the means so entrusted to him. Held that by the transaction he acquired the property upon an express trust in favor of the wife; and one taking a deed of trust from or levying an execution against the husband thereon with notice of the facts took subject to her equitable interest, and could be enjoined from making sale under the trust deed or the execution.

#### 2.—Same—Cases Distinguished, etc.

Carter v. Bolin, 30 S. W., 1084; Brotherton v. Weathersby, 73 Texas, 471; Sparks v. Taylor, 99 Texas, 411, followed; Strnad v. Strnad, 29 Texas Civ. App., 124, distinguished as a case of resulting and not of express trust.

Appeal from the District Court of San Augustine County. Tried below before Hon. James I. Perkins.

*Davis & Davis,* for appellants.—The payment of the note by Mrs. Ellen Mitchell was the payment of the debt of her husband, and subrogated her to the rights of W. G. Sharp to foreclose a lien upon the land, and did not vest in her title to the property, or, if she paid the note and canceled the same at the request of her husband, he became indebted to her for the amount thus paid, and she acquired no title to the property by reason of such purchase. Ullmann v. Jasper, 70 Texas, 446; Torrey v. Cameron, 73 Texas, 583; Merchants Nat'l Bank v. Eustis, 8 Texas Civ. App., 350; Lodge v. Leverton, 42 Texas, 18; Parker v. Coop, 60 Texas, 118; Lacy v. Clements, 36 Texas, 661; Parker v. Fogarty, 4 Texas Civ. App., 615; Strnad v. Strnad, 29 Texas Civ. App., 124; Oury v. Saunders, 77 Texas, 278; McBride v. Banguss, 65 Texas, 174; Matlock v. Glover, 63 Texas, 239; Schuster v. Bauman Jewelry Co., 79 Texas, 179; Evans v. Welborne, 74 Texas, 530; Williams v. San Saba Co., 59 Texas, 442; Toole v. Dibrill, 29 S. W., 387; Long v. Steiger, 8 Texas, 461; Williamson v. Gore, 73 S. W., 566; Hawkins v. Willard, 38 S. W., 365; Mitchell v. Mitchell, 15 S. W., 708; 84 Texas, 303; Arnold v. Ellis, 48 S. W., 886; Gebhart v. Gebhart, 61 S. W., 966; Beach, Eq. Jur., secs. 215, 217, 219; Pom., Eq. Jur., secs. 79, 83; Beach, Trusts, secs. 150, 151, 175; Bisp., Eq., secs. 79-83; Perry, Trusts, sec. 133.

On the question of subrogation: Hicks v. Morris, 57 Texas, 658; Pridgen v. Warn, 79 Texas, 588; Kallman v. Ludenecker, 9 Texas Civ. App., 182; Oury v. Saunders, 77 Texas, 278.

*H. B. Short* and *Foster & Davis,* cited contra: James v. Fulcrod, 5 Texas, 512; Bailey v. Harris, 19 Texas, 110; Ullmann v. Jasper, 70 Texas, 446; Carter v. Bolin, 30 S. W., 1085; Parker v. Fogarty, 4 Texas Civ. App., 615; Hawkins v. Willard, 38 S. W., 365; Strnad v. Strnad, 29 Texas Civ. App., 124; Brotherton v. Weathersby, 73 Texas, 471; Black v. Caviness, 21 S. W., 636; Clark v. Haney, 62 Texas, 511; Schuster v. Bauman Jewelry Co., 79 Texas, 179.

RICE, ASSOCIATE JUSTICE.—This suit was brought by Mrs. Ellen Mitchell, joined by her husband G. T. Mitchell, against appellants Levy & Co., to cancel and annul a deed of trust executed by said G. T. Mitchell and L. H. Knight, on April 12, 1905, wherein five certain lots, situated in the town of San Augustine, Texas, were conveyed to one C. E. Selvage in trust to secure the payment of a note for $2,622.65, which said G. T. Mitchell and said Knight had executed to L. W. Levy & Co. on the same day in payment of an existing indebtedness, which lots the said Mrs. Ellen Mitchell claimed as her separate property; and also for an injunction to restrain S. M. Davis, substitute trustee in said deed of trust, from advertising and selling said lots thereunder to satisfy said indebtedness, as well as to restrain W. S. Noble, sheriff of San Augustine County, from advertising and selling said lots under three several executions, issued out of the County Court of Galveston County, on judgments rendered therein against G. T. Mitchell and L. H. Knight, the said Mrs. Mitchell claiming said lots as her separate property by reason of the fact, as alleged by her, that the same had been purchased with her separate money.

The defendants denied that the lots had been purchased with the separate means of the wife, alleging that they had been purchased by the husband on credit for himself, and that they never formed any part of the separate estate of Ellen Mitchell.

The case was tried by a jury upon special issues, and upon the findings of the jury upon said issues in favor of plaintiffs judgment was rendered for them, from which this appeal is prosecuted.

It appears from the evidence in this case that Mrs. Ellen Mitchell had inherited from the estate of her father and mother some five or six thousand dollars prior to the purchase of the lots in question. Sometime during the year 1902 she became desirous of removing from her country home to the town of San Augustine, for the purpose, among other things, of educating her children, and determined to buy a home there. The lots in question, it seems from the evidence, were selected by her, and she furnished her husband, from her separate estate, the money with which to purchase and pay for the same, and directed him to buy said lots, which he consented to do, for the purpose named, subsequent to which the said G. T. Mitchell, whom the evidence showed had no property or separate means of his own, at the instance and direction of his wife, bought the five lots levied upon by said executions and covered by the deed of trust from one Sharp for the sum of $1,200, he testifying that, while at the time of the purchase it was regarded by him as a cash transaction, that in fact no money was then paid, and the deed from Sharp was taken by the husband in his own name, he executing a note due in thirty days for the amount of said purchase money. The fact that the deed was so taken and the note so executed, and no money paid therefor, was not known to his wife until some time thereafter, but before the note was paid, which was about twelve months after the purchase, she knew that her husband had not paid cash for the lots, and also knew that the deed which had been spread upon the records was not taken in her own name, but the lots were in fact paid for by the husband at the instance of the wife and with her separate money. After the purchase of the lots, they moved upon them, making considerable improve-

ments thereon, and lived there for a while as a home, but returned to their country home some eight months thereafter on account of sickness, from which time the property in San Augustine was continuously rented out by the wife, and at the time of the execution of the note and deed of trust in evidence the family were not living thereon, but had returned to and were living at their country home.

Several years after the consummation of this transaction, to wit: in 1905, the said G. T. Mitchell, who it seems from the evidence had become engaged with others in the saloon business in the town of Beaumont, executed, together with such other parties, the $2,622.65 note, payable to Levy & Co., and at the time of the execution of said note he, together with L. H. Knight, executed the deed of trust upon the lots in question, as well as upon other property then owned by Knight, to secure the payment thereof, this indebtedness having been assumed by said G. T. Mitchell and L. H. Knight. The evidence shows that Mrs. Mitchell knew nothing as to the deed of trust until after its execution, but that before its execution and delivery by G. T. Mitchell he told the agents of Levy & Co. of the fact that these lots were not his property, but belonged to his wife, and that the same constituted his homestead, and that they had been paid for with her separate means, and with said knowledge they accepted said notes and deed of trust.

It was shown that Levy & Co. had recovered judgments in the County Court of Galveston County against G. T. Mitchell and L. H. Knight, and that executions had been issued thereunder which had been levied upon the lots by W. S. Noble, sheriff of San Augustine County, who had advertised said lots for sale; and it further appeared that S. M. Davis, substitute trustee in said deed of trust, had likewise advertised said lots for sale, and that an injunction had been issued restraining the sheriff and said Davis, trustee, from further proceeding thereunder.

There were two assignments of error, but, in our judgment, a discussion and determination of the points raised in the first will suffice, and it is not necessary to discuss the second.

By their first assignment appellants complain of the action of the court in refusing to give a special charge asked by them, wherein the jury were told to find a verdict for the defendants, because, they contend, the evidence was insufficient to warrant a finding for plaintiffs, in that it failed to show that Mrs. Mitchell's separate estate was used in the purchase of said lots, or that she was in any way connected with said purchase, but since the land was bought by the husband in his own name, and his note given in payment therefor, the subsequent payment of said note by her was, in effect, a loan by her to him, and did not invest her with the equitable title to said property, but merely subrogated her to the rights of said Sharp, the vendor of said lots.

Appellants in this case, while not denying the doctrine that where the husband purchases property with the separate funds of the wife, taking title thereto in his own name, a resulting trust in her favor is thereby created, and vests her with the equitable title in the same, still insist that under the facts of this case that doctrine can not be asserted for the reason that none of the purchase money was paid at the time of the transaction, the note of the husband executed in payment thereof having been subsequently paid by him out of the funds of the wife.

Appellees, as we understand their contention, are not asserting that the facts in evidence create a resulting trust in behalf of the wife, but claim, on the other hand, that it establishes a direct or express trust, because the wife delivered to the husband the purchase money for the lots in question, which was her separate estate, upon the express understanding and agreement that he would buy and pay for the same therewith, which agreement was carried out with the exceptions alluded to.

There is abundant authority in this State sustaining the doctrine that if, in this case, the purchase money had all been paid at the time of the transaction, and that the same was the separate property of the wife, notwithstanding the fact that the deed was taken in the name of the husband, she would be the owner of the equitable title. So that the question for determination in this case is, whether or not the failure on the part of the husband to pay for the property at the time of the purchase, but instead giving his note therefor, which was subsequently paid out of the separate means of the wife, would prevent the equitable title from vesting in her. We think the controlling question in this case is the effect to be given to the previous understanding between Mrs. Mitchell and her husband as to the purchase of these lots with her separate means. The uncontradicted evidence shows that they had agreed upon the purchase of these lots for the purpose of making a home thereon; that he had no money, and that it was understood and expected that her money, then in his possession, was to be used in payment for the lots. In pursuance of this understanding between himself and his wife, the lots were in fact purchased, but not paid for at the time, which fact was not known to her. They were subsequently, however, paid for with the separate means of the wife, with her knowledge, and at her instance and direction.

We think this agreement and understanding before the purchase, between the husband and the wife, differentiates this case from the line of cases relied on by counsel for appellants, and must have a controlling effect in the determination of this question. The case of Torrey v. Cameron, 11 S. W., 840, cited by appellants, is not applicable here for the reason, as we think, that in that case there was no previous understanding between the husband and the wife with reference to the purchase of the property, or that she had instructed the husband to buy the same, but instead he had bought the same for his own account, subsequently drawing a draft on his wife for part of the purchase money, which was paid. The court remarking, in passing, "That this is clearly not a case in which the wife entrusts money to her husband for investment for her own benefit, or for safekeeping, and he purchases property with it in his own name. The property was purchased before she paid the money and knew the purpose of the draft was to make or cover a payment upon property which the husband had already purchased on his own account. The payment of the money at the request of the husband was a loan by the wife to him."

We think this case falls clearly within the doctrine announced by Justice Key in Carter v. Bolin, 30 S. W., 1084, wherein the following language is used: "J. P. Bolin having under the law the right to control and manage his wife's separate property, if she authorized him to invest for her $1,000 of the $5,000 received by her on her former hus-

band's life insurance policy, and he did, in fact, invest the $1,000 in the land in controversy, taking the deed, without the knowledge or consent of his wife, in his own name, she has a superior equitable title to the entire tract, although only part of the purchase money was paid at the time the deed was executed. A perfect title was not acquired until all of the purchase money was paid, and if paid with Mrs. Bolin's money in pursuance of an agreement or understanding with her, her husband held the legal title in trust for her."

There is in our judgment no conflict between the doctrine so announced in Carter v. Bolin, supra, and that decided in Strnad v. Strnad, 29 Texas Civ. App., 124. It is true that in the last case, Justice Collard delivering the opinion of the court, held that the wife was vested with an equitable title only to the extent of the purchase money paid from her separate estate by her husband at the time of the transaction, but not as to subsequent payment thereon from her separate estate, from which it is contended by counsel for appellant that said case sustains the doctrine invoked by them, to wit: That no money having been paid at the time of the purchase in the present case, that no title, equitable or otherwise, passed to Mrs. Mitchell, but she was merely constituted thereby the creditor of her husband. However, counsel have, it seems to us, overlooked the fact that there was no evidence whatever in the record in the Strnad v. Strnad case, supra, showing any agreement or understanding between the husband and the wife with reference to the purchase of the property therein involved; and Justice Collard, in passing upon this question, specially comments on this feature of the case, showing, as we think, that had there been testimony indicating the intention of the husband and the wife previously formed, that said purchase was to be for the benefit of the wife's separate estate, that then the whole title would have vested in her, notwithstanding the fact that part of the purchase money was subsequently paid out of her separate estate.

In the present case there is no question of innocent purchaser involved nor relied upon. In the execution of the note Mitchell assumed an outstanding indebtedness, and at the very time that the note and deed of trust in question were given and accepted it is shown that appellants had knowledge of the fact that the lots in question were the separate property of Mrs. Mitchell. Where there is an express agreement or understanding, as in this case, between the husband and the wife, to purchase property with her separate estate for her benefit, and the husband, in pursuance of said understanding and agreement, does in fact purchase said property, and the same is paid for with the separate means of the wife, notwithstanding the fact that the title thereto may have been taken in the name of the husband and placed upon record, this, in our opinion, would vest title in the wife to the property so purchased, and the husband would hold the legal title in trust for her—that such an understanding or agreement creates an express trust in the husband for the benefit of the wife.

In Brotherton v. Weathersby, 73 Texas, 471, where there was an agreement between the Brothertons to buy a land certificate and to locate the same for the benefit of both, Justice Gaines speaking for the court, says: "If there was an agreement to buy the certificate and to

locate the land for the benefit of both, and W. W. Brotherton paid his half of the purchase, then an express or direct trust was created." It seems to us that this doctrine would apply with equal force in the present case, and the mere fact that the agreement is between husband and wife ought not to change the rule.

In the recent case of Sparks v. Taylor, 99 Texas, 411 et seq., in which Taylor, under an agreement with his wife, had invested her separate estate in the land, but which land he had undertaken to convey to another, in a suit brought by the wife for the recovery of the land it was held that she was entitled, as equitable owner, to the land so purchased to the extent of the amount of her separate property used in said purchase. Justice Brown, in delivering the opinion of the court, says: "It follows, necessarily, that the agreement claimed to have been made by Taylor to invest that money so derived from the land of his wife in a contract already existing for the purchase of thirty sections of land, would create in him an express trust in favor of the wife, and he having used the money in acquiring title to the land, Mrs. Taylor was the equitable owner of it in the proportion that the money she furnished bears to the whole price." Citing among other cases in support of the doctrine Parker v. Fogarty, 4 Texas Civ. App., 615; Ullmann v. Jasper, 70 Texas, 446, saying that the cases cited, as well as others which might be referred to, establish as law in this State: "That the husband may enter into contracts with his wife concerning their property rights; may purchase land from her and sell land to her; may borrow money from her and may pay the debt, just as he would any other creditor; that he may become her trustee or agent for the investment of funds which belong to her, the same as he may assume those relations to any other person."

The agreement in this case between the husband and wife to purchase the land for the benefit of her separate estate, and the fact that the same was so purchased and paid for with her separate funds, we think, constitutes the lots in question her separate property, irrespective of the fact that the money was not paid at the time of the purchase, but subsequently. We can not believe that the failure to pay for them at the time of the purchase would alone prevent the operation of the rule so well established in this State, and therefore hold that the court did not err in declining to give the charge requested, and overrule this assignment.

In closing this opinion the writer desires to say that, in the consideration of the questions involved, he has been much aided by the able briefs of counsel on both sides.

Finding no error in the judgment of the court below the same is affirmed.

*Affirmed.*

Writ of error refused.